UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| Michael Akey, | : | |
|     Plaintiff, | : | |
| | : | |
|   v. | : | File No. 1:05-CV-331 |
| | : | |
| Karen Haag, Phil Damone, | : | |
| Roderick Bates, Samantha | : | |
| Clark, | : | |
|     Defendants. | : | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 15)

Plaintiff Michael Akey, proceeding *pro se* and *in forma pauperis*, claims that while he was incarcerated in a Vermont prison the defendants wrongfully deprived him of contact with his family.  The defendants have moved to dismiss, claiming (1) official capacity immunity; (2) insufficient allegations of personal involvement; (3) qualified immunity; (4) lack of physical injury; and (5) failure to exhaust administrative remedies.  For the reasons set forth below, I recommend that the defendants' motion be GRANTED in part and DENIED in part.

### Factual Background

For purposes of the pending motion to dismiss, the allegations in the complaint will be accepted as true.  When Akey filed his complaint on December 29, 2005, he

alleged that he was both in prison and on parole.  (Paper 6 at 15).  His parole officer was defendant Karen Haag.  From July 20, 2005 through his filing date in December, the defendants had been denying him any contact with his family.  Although Akey blames each of the defendants for this deprivation, he singles out Haag as the person most directly involved.  He also alleges that defendant Samantha Clark made sexually inappropriate comments.

Akey brings his claims pursuant to 42 U.S.C. § 1983, alleging violations of his right to freedom of association under the First Amendment.  He also claims sexual harassment and violation of privacy.  The defendants now move to dismiss, arguing that Akey's claims against them in their official capacities are barred by the Eleventh Amendment.  The defendants also seek partial dismissal on the basis of Akey's alleged failure to claim that each of them was personally involved in unconstitutional conduct.  Third, the defendants argue that the alleged conduct was discretionary and did not violate clearly established law, and that they are therefore entitled to qualified immunity.  Fourth, they claim that Akey cannot obtain

damages without alleging actual, physical injury. Finally, the defendants argue that Akey failed to exhaust the prison grievance procedure. The Court will address each of these arguments in turn.

I.  Motion to Dismiss Standard

On a motion to dismiss, "a court has to consider the legal sufficiency of the claim as stated in the complaint and is not to weigh facts underlying the claim or the merits of the case." Esden v. Bank of Boston, 5 F. Supp. 2d 214, 216 (D. Vt. 1998) (citing Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1985)). "In ruling on such a motion, the court must look only to the allegations in the complaint and any documents attached to or incorporated by reference in the complaint." Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir. 1999). Morever, the court must assume all well-pleaded factual allegations to be true and draw reasonable inferences in the light most favorable to the plaintiff. See Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). Dismissal is impermissible unless "it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief." Flores v. S. Peru Copper Corp., 343 F.3d 140, 148 (2d Cir. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

II.  Official Capacty Immunity

The defendants first contend that Akey's claims are barred by virtue of their immunity from suit in their official capacities.  Under the doctrine of sovereign immunity, the Eleventh Amendment bars suits by private citizens against a state or its agencies in federal court unless the state has waived its immunity or Congress has properly abrogated that immunity.  See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-99 (1984); Seminole Tribe v. Florida, 517 U.S. 44, 55 (1996).  The protection of the Eleventh Amendment also extends to suits for monetary damages against state officers sued in their official capacities.  See Brandon v. Holt, 469 U.S. 464, 471 (1985).  Moreover, the Supreme Court has held that, just as states and state agencies are not "persons" under § 1983, state officers acting in their official capacities are not "persons" since they assume the identity of the government that employs them.  See Hafer

v. Melo, 502 U.S. 21, 27 (1991).

With respect to this case, it is clear that neither Vermont nor Congress has waived the sovereign immunity that protects the defendants from a damages action brought against them in their official capacities.  There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983.  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).  It is equally clear that Vermont has not waived its sovereign immunity under § 1983.  See 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not explicitly waived).  Therefore, to the extent that the defendants are being sued in their official capacities for money damages, they are protected by the State of Vermont's sovereign immunity and Akey's damages claims against them should be DISMISSED.

In addition to damages, Akey is seeking injunctive relief in the form of, *inter alia*, an order requiring the

defendants to allow him contact with his family.  A claim for injunctive relief where a plaintiff seeks prospective relief to remedy an ongoing violation of federal law may be maintained against a person in his official capacity. See Ex parte Young, 209 U.S. 123 (1908); Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002).  Because Akey is seeking future relief from what he perceives as an ongoing violation of his First Amendment rights, I recommend that his request for such relief against the defendants in their official capacities survive the motion to dismiss.

III.   Personal Involvement

The complaint alleges specific conduct by defendants Haag and Clark, and alleges generally that "all defendants" allowed Haag to infringe upon Akey's First Amendment rights.  The defendants now move to dismiss any claims against defendants Roderick Bates and Phil Damone, arguing lack of personal involvement.  In response to the motion to dismiss, Akey contends that Phil Damone was his parole officer prior to Haag, and that "Damone is the officer whom [sic] authorized the parole violation, and was part of the revocation hearing along with Karen

Haag." (Paper 16 at 3). With respect to Bates, Akey alleges that "Rick Bates is Phil Damone's, Karen Haag's and Sam Clark's boss. He allowed for them to deny the plaintiff access to his family." Id.

Notwithstanding a lone allegation of sexual harassment, Akey's complaint focuses on the alleged deprivation of contact with his family. There is no allegation in the complaint or elsewhere to suggest that defendant Damone's conduct had any connection to this alleged deprivation. Although Akey contends that Damone played a role in authorizing his parole violation and revocation, it does not appear that these authorizations were linked in any way to Haag's alleged interference with Akey's mail, phone calls, and/or personal contacts.

The claim against defendant Bates appears to derive solely from his position as a supervisor. It is well established that "respondeat superior cannot form the basis for a § 1983 claim." Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998). The personal involvement of a supervisory defendant in a § 1983 claim may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant,

7

after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.  Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  Mere "linkage in the prison chain of command" is insufficient.  Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985).

   Akey claims only that Bates was a supervisor, and that he "allowed" the other defendants "to deny the Plaintiff access to his family."  Akey does not claim that Bates was aware of the alleged conduct, that his supervision was grossly negligent, or that the alleged deprivations were part of a policy or custom.  Because the claims against Damone do not appear to be linked to Haag's conduct, and because Akey was failed to state a

claim for supervisor liability against Bates, I recommend that the claims against both Damone and Bates be DISMISSED for lack of personal involvement.

IV.  Qualified Immunity

The defendants' next argument for dismissal is a claim of qualified immunity.  The doctrine of qualified immunity protects public officials from liability "if their actions were objectively reasonable, as evaluated in the context of legal rules that were 'clearly established' at the time."  Poe v. Leonard, 282 F.3d 123, 132 (2d Cir. 2002) (citation omitted).  Before deciding whether an official is entitled to qualified immunity, a court should determine whether the alleged conduct would constitute a violation of constitutional rights.  See Saucier v. Katz, 533 U.S. 194, 201 (2001); Poe, 282 F.3d at 132.  When determining whether a constitutional right was clearly established, the right must have been "sufficiently clear" that a reasonable official would have understood that what he did was a violation of that right.  See Anderson v. Creighton, 483 U.S. 635, 640 (1987); African Trade & Info. Ctr., Inc. v. Abromaitis, 294 F.3d 355, 360 (2d Cir. 2002).  A right is clearly

9

established when it is supported by the decisional law of the Supreme Court or the applicable circuit court. Abromaitis, 294 F.3d at 361.

The defendants argue that prison restrictions on visitation and other forms of contact with the outside world are discretionary, and that courts should defer to the expertise of correctional officials.  The defendants also contend that the alleged conduct does not violate clearly established law, citing case law for the proposition that "'the denial of prison access to a particular visitor is well within the terms of confinement ordinarily expected by a prison sentence.'" (Paper 15 at 6, quoting Kentucky v. Dep't of Corrections v. Thompson, 490 U.S. 454, 461 (1989)).

In Overton v. Bazzetta, the Supreme Court considered whether prison Michigan prison regulations limiting visitation were constitutional.  539 U.S. 126 (2003). Instead of simply deferring to the State's discretion, however, the Court considered a number of factors including: whether the regulation had a valid connection to a legitimate government interest, whether alternative means were available to the inmates to exercise their

right of association, and what impact the accommodation of the right would have on prison resources.  <u>Overton</u>, 539 U.S. at 132 (citing <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987)).  Similarly, in <u>Bell v. Wolfish</u>, the Supreme Court noted that limitations in the name of security should be viewed in terms of their reasonableness, and that a developed record might show that "'officials have exaggerated their response'" to any perceived security threats.  441 U.S. 520, 540 n.23 (1979) (quoting <u>Pell v. Procunier</u>, 417 U.S. 817, 827 (1974)).

In this case, the parties have not yet established a factual record.  Moreover, the defendants have not identified any penological interests that would justify their alleged conduct.  Consequently, the Court is unable to determine whether that conduct was reasonable, or whether the conduct was so egregious that it violated clearly established law.  <u>See</u>, <u>e.g.</u>, <u>Huminski v. Rutland County</u>, 148 F. Supp. 2d 373, 375 n. 1 (D. Vt. 2001) ("the affirmative defense of qualified immunity generally cannot support a grant of a Rule 12(b)(6) motion to dismiss because the defense requires an investigation into the facts and evidence not available at this early

stage of the pleadings"); see also United States v. Gotti, 755 F. Supp. 1159, 1164 (E.D.N.Y. 1991) ("due deference does not mean blind deference"). The defendants' motion to dismiss based upon qualified immunity should, therefore, be DENIED as premature.

V.   Lack of Physical Injury

The defendants next argue that, under the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(e) ("PLRA"), Akey cannot collect damages absent an allegation of physical injuruy.  The PLRA's physical injury requirement does not apply to a damages claim under the First Amendment.  See Lipton v. County of Orange, 315 F. Supp. 2d 434, 457-58 (S.D.N.Y. 2004).  "[A] First Amendment deprivation presents a cognizable injury standing alone and the PLRA 'does not bar a separate award of damages to compensate the plaintiff for the First Amendment violation in and of itself.'"  Id. at 457 (quoting Ford v. McGinnis, 198 F. Supp. 2d 363, 366 (S.D.N.Y. 2001)). Accordingly, the Court should not dismiss Akey's claim for compensatory damages resulting from the alleged First Amendment violation.  Because this exception applies only to damages for the constitutional violation itself,

12

however, Akey's damages claims for emotional or other non-physical injuries should be DISMISSED.  See Ford, 198 F. Supp. 2d at 366.

VI.  Failure to Exhaust Administrative Remedies

The defendants' final argument is that Akey has failed to exhaust his administrative remedies.  The PLRA states that a prisoner may not file suit under § 1983 "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement set forth in § 1997e applies to all prison condition suits, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

The Second Circuit has held that administrative exhaustion is not a jurisdictional predicate, and that plaintiffs are entitled to notice and an opportunity to be heard before a court can dismiss their complaints for failure to exhaust administrative remedies.  See Richardson v. Goord, 347 F.3d 431, 434 (2d Cir. 2003); Snider v. Melindez, 199 F.3d 108, 113-14 (2d Cir. 1999).  The Second Circuit also considers the failure to exhaust

administrative remedies an affirmative defense.  See Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999). Consequently, most district courts in this Circuit have concluded that the defendant bears the burden of proving the plaintiff's failure to comply with the exhaustion requirement.  See, e.g., Ruocco v. Tung, 2004 WL 721716, at *5 (D. Conn. March 30, 2004) ("By characterizing non-exhaustion as an affirmative defense, the Second Circuit requires the defendants to present proof of non-exhaustion."); Reyes v. Punzal, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002); Hallett v. New York State Dep't of Correctional Serv., 109 F. Supp. 2d 190, 196-97 (S.D.N.Y. 2000).  Because the defendants bear the burden of proof, they cannot merely rely upon the allegations in the complaint absent a clear statement by Akey that exhaustion has not occurred.  See McCoy v. Goord, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003).

Akey states in his complaint that he filed 15 grievance forms, and that only four received responses. He also claims that he "followed all policies and directives of the VT-DOC grievance procedure," and that

14

he has exhausted his administrative remedies. Accordingly, it is not clear from the complaint that Akey has failed to exhaust the prison grievance procedure.

As discussed above, it is the defendants who carry the burden of proof, and absent a clear indication in the complaint that exhaustion was not achieved, it is the defendants who are required to come forward with evidence that Akey did not, in fact, exhaust his claims. This evidence may come in the form of Akey's complete grievance record, as well as supporting affidavit(s) stating that administrative remedies were available at all times and that, nonetheless, exhaustion did not occur. See, e.g., Ruocco, 2004 WL 721716, at *5-*6 (motion denied where defendants failed to provide copies of grievances filed and an affidavit from the grievance coordinator); see also Snider v. Melindez, 199 F.3d 108, 114 (2d Cir. 1999) (court must determine existence of administrative remedies that are applicable to the instant claim based upon a "legally sufficient source").

If the defendants are entitled to dismissal due to Akey's failure to exhaust, they should be allowed to submit further briefing and evidence. Because such

submissions would necessarily go beyond the allegations in the complaint, the appropriate vehicle is a motion for summary judgment. See McCoy, 255 F. Supp. 2d at 249 ("if, as is usually the case, it is not clear from the face of the complaint whether the plaintiff exhausted, a Rule 12(b)(6) motion is not the proper vehicle"); Scott v. Gardner, 287 F. Supp. 2d 477, 485 (S.D.N.Y. 2003). In this case, as in most cases, a Rule 12(b)(6) motion is insufficient. I therefore recommend that the defendants' motion to dismiss for lack of exhaustion be DENIED.

## Conclusion

For the reasons set forth above, I recommend that the defendants' motion to dismiss (Paper 15) be GRANTED in part and DENIED in part. Specifically, I recommend that the motion to dismiss Akey's claims for damages against the defendants in their official capacities be GRANTED, and that these claims be DISMISSED. I also recommend that the Court GRANT the motion to dismiss all claims against defendants Damone and Bates. Finally, while Akey may recover damages for First Amendment violations, his damages claims for mental and emotional distress should be DISMISSED. In all other respects, the

defendants' motion to dismiss should be DENIED.

Dated at Burlington, in the District of Vermont, this 4th day of October, 2006.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).