UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Michael Akey,
    Plaintiff,

v.                           File No. 1:05-CV-331

Karen Haag, Samantha Clark,
    Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 58)

Plaintiff Michael Akey, proceeding *pro se*, claims that while he was incarcerated in a Vermont prison the defendants wrongfully deprived him of contact with his family and subjected him to sexual harassment. The complaint seeks both injunctive relief and damages. The defendants have moved for summary judgment, arguing that any claims for injunctive relief are moot and that all remaining claims are meritless. The motion is unopposed.

For the reasons set forth below, I recommend that the defendants' motion for summary judgment be GRANTED and that this case be DISMISSED.

## Factual Background

In 2000, Akey was convicted of lewd and lascivious behavior, driving under the influence and burglary. He remained under Vermont Department of Corrections ("DOC")

control through May 2006.  Akey's complaint alleges that between July 20, 2005 and his filing date of December 23, 2005, Parole Officer Karen Haag and Community Corrections Officer Samantha Clark denied him contact with his family.  He also claims that Clark made inappropriate sexual comments.

Akey's primary legal claim is that, by restricting his access to family members, the defendants violated his right to freedom of association under the First Amendment.  In a related claim, he alleges that his right to privacy was violated when the defendants intercepted his mail.  Additionally, as a result of Clark's alleged comments, Akey charges the defendants with sexual harassment.  For relief, he asks that the defendants be removed from their jobs and that he be allowed to have contact with his family.  He also requests an award of damages.

The defendants now move for summary judgment, arguing that because Akey is no longer under DOC control, his claims for injunctive relief are moot.  They further argue that restrictions on Akey's contacts with family, both while in prison and on parole, were necessary for

2

legitimate penological reasons.  The defendants also contend that Akey's allegations of sexual harassment do not rise to the level of an Eighth Amendment violation, and that limiting his outgoing, non-legal mail was not unconstitutional.  As noted above, the summary judgment motion is unopposed.

I. <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see</u> also <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Grady v. Affiliated Cent., Inc.</u>, 130 F.3d 553, 559 (2d Cir. 1997). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn

in [her] favor." Anderson, 477 U.S. at 255. Moreover, because Akey is proceeding *pro se*, the Court must read his submissions liberally "to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); Salahuddin v. Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998). Finally, although the motion for summary judgment in this case is unopposed, that does not relieve the Court "of its duty to decide whether the movant is entitled to judgment as a matter of law." Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004).

II. Claims for Injunctive Relief

Akey seeks injunctive relief in the form of personnel actions against the defendants and increased access to his family. Although Akey was under DOC control when he filed his complaint, he has since been released. (Paper 59, ¶ 12). Where a prisoner is released from prison, his claims for injunctive relief based upon conditions of his confinement must be dismissed as moot. See Hallett v. New York State Dep't of Corr. Serv., 109 F. Supp. 2d 190, 196 (S.D.N.Y. 2000); see also Rhodes v. Stewart, 488 U.S. 1, 4 (1988) (suit

for injunctive relief was moot where one prisoner had died and the other had been released by the time the district court entered an order). Accordingly, I recommend that Akey's requests for injunctive relief be DISMISSED.

III. <u>Restricted Contacts With Family</u>

Akey claims that the defendants limited his contact with family members by preventing visitation, intercepting his mail, and removing phone numbers from his "inmate pin sheet." (Paper 38-2 at 3). He also claims that they prevented him from having contact with his daughter's family. These practices allegedly took place while Akey was incarcerated and continued after he was placed on parole.

Akey brings this claim under the First Amendment's right of association. With respect to a prisoner's rights under the First Amendment, the Supreme Court has observed that

> [a] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to

5

> whose custody and care the prisoner has been committed in accordance with due process of law.

Pell v. Procunier, 417 U.S. 817, 822 (1974). With respect to practices or regulations pertaining to prisoner visitation rights, the Court should review (1) whether the regulation had a valid connection to a legitimate government interest, (2) whether alternative means were available to the inmates to exercise their right of association, and (3) what impact the accommodation of the right would have on prison resources. Overton, 539 U.S. 126, 132 (2003) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). In Turner, the Supreme Court noted that communications with certain persons (specifically, other felons) may be curtailed even after the inmate is released on parole. 482 U.S. at 91-92. A prisoner claiming that his right to association has been violated must allege facts sufficient to support a finding that the restrictions bear no "rational relation to legitimate penological interests." Overton, 539 U.S. at 131-32.

In support of their motion for summary judgment, the defendants have each submitted detailed affidavits explaining their actions. According to those affidavits,

6

Akey was barred from associating with his mother, sister, uncle and grandmother, as well as the mother of his child, the child herself, and the child's grandmother. Akey was also reportedly barred from contacting a person related to the victim of his brother's manslaughter conviction, and a friend who was on parole. In each instance, the defendants argue that they had a legitimate interest in limiting Akey's contacts.

Defendant Haag was Akey's Parole Officer from December 2004 through his parole revocation on January 5, 2006. Her affidavit begins by explaining that "[d]uring the time of Plaintiff's incarceration and parole, his designated need areas were sexual boundaries, alcohol, drugs, violence and life skills. . . . An offender's need areas are those skills that the offender must develop and refine in order to lead a law abiding, pro-social life." (Paper 59-2 at 2). In Haag's opinion, Akey had "an inability to properly manage stress, conflict and anger, particularly when attempting to manage stress and anger arising from interpersonal relationships." Id. at 3. According to Haag, those anger issues often resulted in poor decisions,

7

belligerence, physical violence, excessive alcohol consumption, and a "substantially increased . . . likelihood for engaging in risky or criminal behavior." Id.

Accordingly, Haag maintained a list of people to whom Akey's access would be limited. These limitations were consistent with the conditions set forth in Akey's Parole Agreement. The list included both family and non-family members. Haag states in her affidavit that, due to Akey's inability to manage his stress and anger arising from his relationships with these people, she felt that "the only means through which Plaintiff would learn to effectively cope with such stress factors was to remove them from his life for a period of time." Id.

Among the individuals with whom Akey was barred from communicating was his mother, Lynn Akey. Ms. Akey was reportedly "a regular source of emotional neglect and abuse of Plaintiff," and "repeatedly became involved in verbal altercations with Plaintiff, at times leading to the involvement of police." Id. at 5. Ms. Akey had herself been on probation for disorderly conduct, and has a history of drug addiction and mental health issues.

8

Id.  Akey was not completely barred from communicating with his mother, as on at least one occasion he was allowed a supervised phone call with her.  The conversation ended in "a verbal altercation."  Id. at 6.

Restricted contact with Akey's sister, Lisa Akey, was again due to Haag's opinion that the sister was a negative influence.  Id.  The sister was on probation, and was described by the plaintiff as being "a potential trigger for his detrimental behavior."  Id.  Haag describes Akey's relationship with his sister as "akin to that of this mother . . . and led to the same negative behaviors as other stressful relationships."  Id.

Restrictions on contact with Akey's uncle and grandmother, William and Janet Orvis, were put in place at the Orvis's request.  Although Haag felt that these individuals could potentially be stabilizing influences for Akey, she feared that he might be traumatized by their temporary rejection, and that such trauma would be "contrary to Plaintiff's rehabilitation."  Id. at 5-6.

Mary Taylor, the mother of Akey's child, also asked that she and her child be placed on Haag's list.  Prior to this restriction, Akey reported to Haag that Taylor

9

had been verbally abusive toward him, and that she would regularly upset him by claiming that he was not, in fact, the father of her child. When Akey was allowed contact with Taylor, his inability to cope with the stress of the relationship had a negative impact on his rehabilitation. Contacts with Taylor's mother were also restricted at the mother's request. Akey's contacts with his daughter, Maggie Taylor, were restricted in part because of uncertainty as to his paternity, and because of his status as a convicted sex offender.

While these restrictions were in place, Akey was allowed to participate in programs through which he could earn the ability to have contact with restricted individuals. For example, he was offered family counseling and parenting classes, every hour of which would entitle him to contact with members of his own family or the Taylors. Haag reports that Akey did not avail himself of these options. Id. at 9.

Courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the

10

most appropriate means to accomplish them." Overton, 539 U.S. at 132 (citations omitted). Here, it is clear that in placing certain individuals on the restricted list, Haag was trying to further Akey's rehabilitation by separating him from disruptive influences. Haag was also working to protect the public and law enforcement from Akey's misbehavior, as such behavior often resulted from contacts with the restricted persons.

When a prisoner is conditionally released on parole, the government 'retains a substantial interest in insuring that its rehabilitative goal is not frustrated and that the public is protected from further criminal acts by the parolee.'" Birzon v. King, 469 F.2d 1241, 1243 (2d Cir. 1972). Here, Haag has set forth legitimate reasons for restricting Akey's access to certain persons. She also reports that contacts with family members were not entirely barred, and that Akey was given the opportunity to earn contact time. No "alternative means" of communication were appropriate, and a failed rehabilitation would have increased the burden on prison resources. Overton, 539 U.S. at 132. Finally, Akey has failed to show that Haag's actions lacked any rational

relation to a legitimate penological interest. Overton, 539 U.S. at 131-32. Accordingly, I recommend that the defendants' motion for summary judgment be GRANTED, and that Akey's First Amendment claim be DISMISSED.

IV. Sexual Harassment

Akey's sexual harassment claim reads:

> On 10-08-15 Plaintiff was asked by defendant Samantha Clark in the presence Defendant Haag, how long Plaintiff was and asking him if he was having sexual intercourse with his daughter's grandmother Kathy Kobel.

(Paper 6 at 3).[1] Clark has submitted an affidavit explaining that, as a Community Corrections Officer for the DOC, part of her job was to investigate Akey's actions while he was on parole. In that capacity, Clark discovered that Akey was visiting Kobel. On one such occasion, the visit occurred after Akey's curfew. In an effort to determine the nature of the relationship, Clark asked Akey if he was having a sexual relationship with Kobel. She states in her affidavit that she "had no intention of sexually harassing Plaintiff." (Paper 59-4

---

[1] This claim is incorporated into the amended complaint by reference. (Paper 38-2 at 4).

at 3).

Akey's sexual harassment is analyzed under the Eighth Amendment, which governs conditions of confinement. <u>Boddie v. Schnieder</u>, 105 F.3d 857, 861 (2d Cir. 1997). An official violates the Eighth Amendment when the alleged "punishment" is "objectively, sufficiently serous." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). Liability under the Eighth Amendment also requires that, from a subjective standpoint, the official had a sufficiently culpable state of mind. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981).

"[T]here can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." <u>Boddie</u>, 105 F.3d at 861. However, the Eighth Amendment is not violated where an inmate alleges only isolated incidents which are not "cumulatively egregious in the harm they inflicted." <u>Boddie</u>, 105 F.3d at 861. In <u>Boddie</u>, "the Second Circuit dismissed as inadequate a prisoner's claim that a female corrections officer made a possible pass at him, squeezed his hand, touched his penis, called him a 'sexy black

devil,' pressed her breasts against his chest, and pushed her vagina against his penis." Suarez v. Kremer, 2008 WL 4239214, at *6 (W.D.N.Y. Sept. 11, 2008) (citing Boddie, 105 F.3d at 859-61); see also Morales v. Mackalm, 278 F.3d 126, 132 (2d Cir. 2002) (holding that allegations that female correctional officer asked plaintiff to have sex with her and to masturbate in front of her and other female correctional officers did not state a claim for sexual harassment).

Here, the allegations do not state an Eighth Amendment claim. Based upon the undisputed record at summary judgment, Clark's inquiry about a possible sexual relationship between Akey and Kobel appears to have been legitimate. Although Akey alleges that an additional inappropriate comment was made, the comment was not so objectively egregious as to have violated his constitutional rights. I therefore recommend that Akey's sexual harassment claim also be DISMISSED.

V. Right to Privacy

Akey's final claim is that interference with his mail and phone calls to his mother, his daughter, and his daughter's family violated his right to privacy. For

14

reasons set forth above, limitations on such communications did not violate his rights under the First Amendment. Moreover, and specifically with respect to Akey's mail, "'[r]estrictions on prisoners' mail are justified only if they 'further[ ] one or more of the substantial governmental interests of security, order, and rehabilitation . . . .'" <u>Davis v. Goord</u>, 320 F.3d 346, 351 (2d Cir. 2003) (quoting <u>Washington v. James</u>, 782 F.2d 1134, 1139 (2d Cir. 1986)). As discussed above, the defendants' affidavits make clear the need for limiting Akey's interactions with certain individuals based upon concerns for Akey's rehabilitation and for maintaining public safety. I therefore recommend that this claim be DISMISSED.

## <u>Conclusion</u>

For the reasons set forth above, I recommend that the defendants' motion for summary judgment (Paper 58) be GRANTED and that this case be DISMISSED.

Dated at Burlington, in the District of Vermont, this <u>24th</u> day of October, 2008.

<u>/s/ Jerome J. Niedermeier</u><br>
Jerome J. Niedermeier<br>
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).